Our next case this morning is Smith v. Bogley All right, I see both counsel. Ms. Holt, you may proceed. Thank you, Your Honor, and may it please the Court. In this case, a narrow majority of the Wisconsin Supreme Court held that Adrian Smith failed to invoke his right to silence when he told his interrogating officer at least three times over the course of just a few sentences that he did not want to talk. That holding was contrary to and an unreasonable application of clearly established federal law for at least two reasons. First of all, Mr. Smith's invocation was unambiguous, and he effectively invoked his right to silence. Second, any ambiguity in Mr. Smith's statement went only to the scope of his invocation and not to the invocation itself, and the Wisconsin Supreme Court's holding that that ambiguity should be construed against Mr. Smith was directly contrary to the Supreme Court's holding in Connecticut v. Barrett. Turning to the first issue, Mr. Smith's invocation was unambiguous. The Supreme Court has made clear repeatedly that there is no particular formulation of words that is required in order to invoke the Miranda rights and the Fifth Amendment right to silence. Indeed, a suspect need not speak with the distinction of an Oxford dog. Here, all that was required was that Mr. Smith speak sufficiently clearly such that a reasonable officer would understand that he was invoking his right to silence, and he easily satisfied that standard here. Ms. Holt, in your blue brief, you argue that it was an unambiguous invocation, quote, at least to some extent, end quote. What do you mean by that last phrase? Yes, Your Honor. So the Wisconsin Supreme Court held that there was ambiguity as to whether he was attempting to invoke his right to silence as to the robberies, as to the van, or overall. And it's unambiguous, at least that he was attempting to invoke his right to silence as to something. Any three of those, any one of those three options would be invoking the right to silence. Right. So isn't it isn't the fairest reading of the transcript that there's there's a minimum ambiguity, you know, about, you know, what he was invoking as to but it, you know, the Wisconsin Supreme Court, it seems to me could have could have read that transcript to say he was willing to keep talking about the van but not the robberies. Your Honor, respectfully, I disagree, both facially and in context, the statement, I don't want to talk and I don't want to talk about this, each of which, which Mr. Smith said, was an unambiguous. In this case, there was only one topic of conversation because the van was just part of one investigation into a larger series of armed robberies. And that is why he was being interrogated about the van was because the detective was interested in the van's alleged use in the series of armed robberies. So by stating that he did not want to talk, he didn't want to talk about this. He was unambiguously attempting to remain silent as to that topic as a whole. But even if there is some ambiguity as to whether he was attempting to invoke his right to silence only about the robberies, or overall, that is not the type of ambiguity that is relevant under Davis or Burgess. Davis makes clear that the type of ambiguity at issue is if a reasonable officer would only understand that a suspect might be attempting to invoke his Fifth Amendment rights. But here, there's no dispute that Mr. Smith was attempting to invoke the right to silence at least as to something. At a minimum, then, the only type of ambiguity at issue is the type that Connecticut v. Barrett said, must be construed in favor of the suspect. It was already plainly established law at the time of Connecticut v. Barrett, that selective waivers and selective invocations, to the extent that they're ambiguous, they have to be construed broadly. So in this case, if the only ambiguity is whether he was attempting to invoke his right to silence as to the robberies, or he was attempting to invoke an overall right to silence, that type of ambiguity has to be construed in Mr. Smith's favor. And conflating those two kinds of ambiguity, as the Wisconsin Supreme Court did here, was error under clearly established federal law. And there's no question that these are two entirely distinct questions. At the time of Connecticut v. Barrett, the court already explained that it was clearly established that ambiguity as to scope had to be construed broadly. And the court in that decision reserved the question of whether ambiguous invocations, the type of ambiguity addressed in Davis and Burgess, were sufficient to invoke the right to silence. So the court has long understood that these are two separate questions. And the Seventh Circuit, this court, has recognized since Davis and Burgess, that the rule from Connecticut v. Barrett remains good law. It has continued to cite that rule and to apply it in cases involving the right to silence and the right to counsel. Because the Wisconsin Supreme Court did not purport to rely on a view that this was an unambiguously selective invocation, which is what would be required for the officer to be permitted to continue, the court's decision was simply incorrect under Connecticut v. Barrett. But turning back to the first issue, there is not even ambiguity. The Wisconsin Supreme Court had to strain to create the ambiguity that it found in the first place. The context here did not create any ambiguity. And the Wisconsin Supreme Court looked at pieces of context that could not create ambiguity here. For example, it looked at statements that were made after the invocation, after interrogation had continued for some length of time, to argue that that confirmed its belief that the original invocation was not, in fact, an invocation. And it looked at that Mr. Smith also declared that he was innocent and purported to claim that that was incompatible with attempting to invoke the right to silence. But the court cited no case law and offered no analysis explaining why that would be incompatible. If the court has no further questions, I'll reserve the remainder of my time. Thank you. Mr. Whitworth. Jake Whitworth, Assistant Attorney General, Wisconsin Department of Justice for the respondent, Gary Bolton. I would like to squarely address Connecticut v. Barrett first, perhaps more squarely than I did in my brief, to distinguish it from the Tompkins and Davis cases. Barrett is an earlier case that related to the Miranda warnings at the beginning, at the start of the interview in Barrett, the defendant said that he didn't want to offer a written statement, that he wanted the assistance of counsel to do that, but that he would talk to the police. And so the Supreme Court said that was fine. The officer continued the interview. The Supreme Court said that that was fine. But in the course of analyzing the issue, the court said, and this is the single line really that Mr. Smith's case turns on, he said, the court says, we do not denigrate the quote, settled approach to questions of waiver that require us to give broad, rather narrow interpretation of a defendant's request for counsel. We observed that this approach does little to aid the respondent's cause in this case. The point is that before the person has actually sat down for the interview, requests for counsel are construed broadly. Any ambiguity in a request for counsel prior to the interview is construed in the defendant's favor, and that's appropriate. And that was the case in Barrett. That was when the invocation happened, before the interview actually happened. This, on the other hand, is a classic Davis-Tompkins case where you're dealing with an invocation in the middle of the interview. According to Davis, according to Tompkins, because the individual has waived the right to counsel at that point, has waived the right to silence, in order to re-invoke that right, the defendant must do so unambiguously and unequivocally. That's why Barrett doesn't apply in this situation. That's why that single line in which Smith's case essentially relies doesn't apply. What I was going to start with today, and I'll say it now, is let's suppose that my wife and I, let's suppose that we were having breakfast, and we talked about the usual things that we talked about at breakfast, how the boys are doing in school, the news, how work is going, and my wife asks me, so do you think that you and I think to myself, oh no, I don't have time. I have all of these cases at work. I have all these other obligations, but instead of responding with that, I say, I'm sorry, I don't want to talk about it. What my wife would understand me to be saying is that I didn't want to talk about the topic that she just raised. That's exactly the case here. At the beginning of the interview, Adrian Smith, he waives his right to counsel. He agrees to sit and talk to investigators. He's quite voluble on a number of topics, especially the stolen van. In fact, toward the end of this part of the interview that I'm describing, he says, is there anything else you want to know about the van? What else can I tell you about it? And then at that point, the officer says, he shift gears, and he says, well, we're going to talk about this now, and he starts describing a series of exchanges. And so he goes into these robberies, and before he can finish describing them, Adrian Smith says, I don't want to talk about this, and variations on I don't want to talk about this over a series of exchanges. The only time that he says, I don't want to talk, is followed up by a statement immediately after that saying, I don't want to talk about this. I'm here for the van. He says three times during that, I'm here for the van, meaning that he's an unequivocal, unambiguous indication of the right to cut off questioning. Mr. Whitworth, I'm sorry. Go ahead, Judge Jackson. I'll follow you. Go ahead. In Tompkins, we now have the rule that the statement must be unequivocal, because in that the question about God. So the Supreme Court said, the statement needs to be unambiguous. It needs to be unequivocal. And then it went on to say, had Tompkins said he wanted to remain silent, or I don't want to talk, there'd be no issue. Here, Mr. Smith says, I don't want to talk. I don't want to talk about this. How is he not doing exactly what the Supreme Court said we need to look for? I think that if you take a look at it in context, and you'll see that what he's responding to is responding to the particular topic that the officer has just raised. Why do we need context when he's using the very words the Supreme Court said are what we'd look for in Tompkins' interrogation? He only says once, I don't want to talk about this. And then he continues talking. I'm sorry, he only says once, I don't want to talk. And then he continues talking and repeats, I don't want to talk about this. So he says, when a person says, I'm sorry, go ahead. No, no, go ahead. When a person says that they don't want to talk about this, it only begs the question, what don't you want to talk about? And in this case, I think the context is clear that the, that he doesn't want to talk about the topic that the officer just raised. In fact, he affirmatively says, I'm here for the van. Essentially, I'll continue talking about the van. He hasn't unambiguously asserted his right to silence in the moment. Would you agree that we don't look to context if the statement is unambiguous? I believe that when you're construing any document or you're construing any situation, that context is relevant to a plain meaning interpretation. So I do believe that you always look to context. It can be relevant to the plain meaning of something. You would have to divorce that one time that he says, I don't want to talk from everything else to get anything other than I don't want to talk about this particular thing that he's responding to. Stuart, my question is, if you did look at context, one of the points that Ms. Holt makes is that the moment that Detective Guy, that's his name, I think, Detective Guy, the moment that he injects the robbery or robberies into the equation, that's a game changer. Because at that point in time, Mr. Smith realizes that this is not a case just about whether a van was stolen and who stole it. The gig is up and he's in very hot water at that point in time. So why, if you did look at context, why isn't what he said enough to cut that off? Because at that point, you can't separate the topics. It's not, you know, while you're at the breakfast table talking about work and your wife asks you about cleaning the garage, well, that's night and day. But it's not night and day in this particular situation for somebody like Smith, who realizes that Detective Guy is on to him. Sure. If he had wanted to cut off questioning altogether, he would have said repeatedly, I don't want to talk or this interview is over or something else to that effect. Instead, he says in response to the topic that the officer just raised, I don't want to talk about this. I understand from the legal perspective, from the perspective of the investigators, that there is a connection between these two things, between the stolen van and the robberies. That doesn't answer the question of how the suspect is viewing it and how he's responding to it. He responds to it to say, I don't want to talk about this, meaning this particular part of the investigation of what you're talking about. In fact, I'll say it again. I want to talk about the stolen van. I'm here for the van. And so I think given the actual words that he uses, it demonstrates a willingness to continue the interview in some form, not an unequivocal desire to cut off questioning. I think too, that this has to be viewed through the lens of AEDPA as well. So if there's any reasonable way that the Wisconsin Supreme Court could have viewed this to be not an unequivocal invocation that must be upheld on habeas review. I'm surprised you didn't lead with that, Mr. Ritt. Well, I ended with it. Understood. It has to be an extreme malfunction, the state Supreme Court's decision of the criminal justice system in order to meet the standard for 2254D granting of the writ. Can this decision of the state Supreme Court under any reading of it be characterized as an extreme malfunction of the criminal justice system and that no fair-minded judge could agree with what four justices of the state Supreme Court said? I would agree entirely, as did Judge Adelman in siding with the warden in this case and in denying a certificate of appealability in this case. There's some strange bedfellows. Judge Adelman doesn't often agree with the justices of the state Supreme Court who rendered this decision. I think you're correct, Chief. It would be extraordinary to call this an unreasonable application. In fact, it wasn't a 4-3 decision, was it? It was 4-3 as to Adrian Smith's case. It was 5-2 as to the Cummings case. Okay. Thank you for that clarification. Ms. Holt, rebuttal. Thank you, Your Honor. First, my colleague has suggested that Connecticut be fair. It can be distinguished on the basis that its holding purportedly only applies to the beginning of an interrogation rather than Davis and Tompkins, which apply after the interrogation has been ongoing. But there's no basis in any of these cases to suggest that that distinction holds. In Burgess v. Tompkins, the suspect had remained largely silent. It was unclear whether he had ever affirmatively indicated that he understood his Miranda rights. There was no affirmative waiver that had taken place earlier. The rule that applied there was applied because there was no unequivocal invocation of the right to silence at any point. Here, there was an unequivocal invocation of the right to silence. The sole dispute is whether it was as to all topics or only as to some topics. Where the scope of an invocation is ambiguous, the rule from Connecticut comes into play. Davis and Tompkins never purported to create a different rule. I meant to ask you one question in your affirmative argument. Can I ask it now? The statement concerns me because if you're right about it, it's possible it has some impact here. On the very last page of your blue brief, page 39, you say, according to the Wisconsin Supreme Court, et cetera, because this was ambiguous, the police could continue to question him about everything. Where do you see that in the Wisconsin Supreme Court opinion? Your Honor, the police did continue to question him about everything. The police continued to question him about the ban. The police continued to question him about the robberies. There was no limitation on what the police continued to question. I thought the Wisconsin Supreme Court, though, was what they were saying is that, and I'm looking right at the opinion on page 25 of the opinion itself, that the additional statements that Smith made, that he was willing to continue answering questions about the van, indicated that he was willing to answer questions about the van, but perhaps unable or unwilling to answer questions about the robberies. In other words, they just didn't view it as a categorical invocation. The reason that I'm saying that is because isn't that exactly what Smith put in front of the Wisconsin Supreme Court? Your Honor, the argument that Mr. Smith has put forward at all levels of the Wisconsin courts was that he unequivocally invoked his right to silence. There was no need for him to argue about- On all topics, correct? Your Honor, these are just separate questions. Mr. Smith had no need to argue about the right to silence. Any lingering ambiguity that exists about the scope, and Mr. Smith did attempt to invoke his overall right to silence because there was only one topic here, but any lingering ambiguity as to scope is simply a separate question from the claim that he put forward, which is he unequivocally invoked his right to silence. If you could address the standard of review, Ms. Holtz, you haven't done that. You've been arguing your case as though we're here on a plenary review and we're not. Well, I understood you to say in the beginning- What did the Wisconsin Supreme Court say that was beyond what a fair-minded jurist would say? Yes, Your Honor. The Wisconsin Supreme Court stated on page 25 of its opinion, the mere fact that Smith's statements could be interpreted as selective refusals to answer questions is sufficient to conclude that he did not successfully invoke his right to silence, and require cutting off questioning. That is directly contrary to Connecticut v. Barrett. The fact that someone could conclude that it was a selective rather than a categorical indication- Connecticut v. Barrett argument was not raised in the state Supreme Court. Your Honor, there's only one argument here, that he unequivocally invoked his right to silence. There is no requirement that a suspect unequivocally cut off questioning. None of these cases involve a suspect saying, I no longer wish for the police to ask me questions. They all involve suspects attempting to invoke the right to silence. Mr. Smith has consistently argued that he unequivocally invoked the right to silence. The fact that the Wisconsin Supreme Court conflated the question of invocation and scope is not Mr. Smith's fault, but it was a clear error under federal law. All right, thank you. Our thanks to all counsel. The case is taken under advisement.